WALKER (WASHINGTON v.). See Case No. 17,235.

WALKINSHAW (TOBIN v.). See Cases Nos. 14,068–14,070.

WALKINSHAW (UNITED STATES v.). See Case No. 16,633.

## Case No. 17,091.

### The WALKYRIEN.

### [3 Ben. 394.] [1]

District Court, E. D. New York.   Sept., 1869.[2]

MARITIME LIENS—SUPPLIES.

1. Where supplies were furnished, in the port of New York, to a vessel which hailed from a British port, carried the British flag, and was intending to proceed to a foreign port to be sold as a British vessel, the supplies being furnished on the order of the owner, but on the credit of the vessel, and being charged to her; *Held*, that her owner could not be permitted to claim that she was a domestic vessel, even though it had been proved that her owner resided in New York.

[Cited in The Brantford City, 29 Fed. 386.]

2. The vessel was liable for the supplies.

[Cited in The George T. Kemp, Case No. 5,-341; The Alice Tainter, Id. 195; The Rapid Transit, 11 Fed. 330; The Scotia, 35 Fed. 909.]

In admiralty.

Emerson, Goodrich & Wheeler, for libellants.

Beebe, Donohue & Cooke, for claimant.

BENEDICT, District Judge. This is an action to enforce an alleged lien against the bark Walkyrien, for the amount of certain repairs and supplies furnished that vessel, in the port of New York, in the year 1865. The vessel, as it appears, was then in the port of New York, and bound on a voyage to sea. Her rigging requiring to be overhauled, to enable her to sail, the libellant was employed by J. C. Jewett, the owner, to do the necessary work. The work was done upon the credit of the vessel, was charged to the vessel, and the amount is not disputed. Afterwards the vessel left the port, and did not return until shortly before the commencement of this action, when she was promptly proceeded against, to enforce the lien for the amount of the bill. The only question at issue between the parties is, as to whether, by the maritime law, any lien was created upon this vessel.

It appears in evidence, that the vessel in question, at the time the work was done, hailed from a British port, carried the British colors, and was intending to proceed to a foreign port, there to be sold as a British

vessel. Claiming thus the advantages which might be supposed to follow a British vessel, it is not permitted to her owner to assert, in this action, that she was a domestic vessel, or that she was in her home port, when the supplies were furnished, even had it been proved, as it has not, that her owner resided in New York. 2 Mar. Law Cas. (1865) 225.

The case comes clearly within the previous cases of The James Guy, decided by this court, and affirmed by the circuit court, and within the late decision of the supreme court of the United States in the case of The Belfast, 7 Wall. [74 U. S.] 643, where it is declared that material men who furnish supplies to a vessel in a foreign port, or in a port other than her "home port," have a maritime lien, because such supplies are presumed to be furnished upon the credit of the vessel. Such a presumption must be held to arise in a case like this, where the supplies were furnished to a vessel hailing from a British port, carrying the British flag, and bound for a foreign port, for the purpose of sale there as a British vessel. The decree must, accordingly, be for the libellant, with a reference to ascertain the amount.

[The case was taken to the circuit court on appeal, where the decree of this court was affirmed. Case No. 17,092.]